**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**Southern Division**

| | | |
|---|---|---|
| **ANGELA W.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. CBD-19-2083** |
| | ) | |
| **ANDREW SAUL,** | ) | |
| | ) | |
| **Commissioner,** | ) | |
| **Social Security Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>MEMORANDUM OPINION</u>

Angela W. ("Plaintiff") brought this action under 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner"). The Administrative Law Judge ("ALJ") denied Plaintiff's claim for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("SSA") and for Supplemental Security Income Benefits ("SSI") under Title XVI of the SSA. Before the Court are Plaintiff's Motion for Summary Judgment ("Plaintiff's Motion"), ECF No. 13, Plaintiff's Alternative Motion for Remand, ECF No. 13, ("Plaintiff's Alternative Motion"), and Defendant's Motion for Summary Judgment ("Defendant's Motion"), ECF No. 15. The Court has reviewed the motions, related memoranda, and the applicable law. No hearing is deemed necessary. *See* Loc. R. 105.6 (D. Md.). For the reasons presented below, the Court hereby **DENIES** Plaintiff's Motion, **DENIES** Defendant's Motion, **GRANTS** Plaintiff's Alternative Motion, and **REMANDS** the ALJ's decision pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion. A separate order will issue.

I.      **Procedural Background**

On November 8, 2016, Plaintiff filed for DIB and SSI under Titles II and XVI of the

SSA, alleging disability beginning October 20, 2016.  R. 15.  Plaintiff alleged disability due to

high blood pressure, severe back pain, blurred vision, bipolar disorder, depression, anxiety, and

hip and knee problems.  R. 83–84, 93–94, 106, 121.  Plaintiff's claims were initially denied on

January 10, 2017, and upon reconsideration on June 27, 2017.  R. 15.  An administrative hearing

was held on July 17, 2018.  *Id.*  On August 9, 2018, Plaintiff's claims for DIB and SSI were

denied.  R. 29.  Plaintiff sought review by the Appeals Council, which concluded on June 22,

2019, that there was no basis for granting the request for review.  R. 1.  Plaintiff subsequently

filed an appeal with this Court.  ECF No. 1.

II.     **Standard of Review**

On appeal, the Court has the power to affirm, modify, or reverse the decision of the

ALJ "with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g) (2019).

The Court must affirm the ALJ's decision if it is supported by substantial evidence and the

ALJ applied the correct law.  *Id.*  ("The findings of the Commissioner of Social Security as

to any fact, if supported by substantial evidence, shall be conclusive."); *see also Russell v.*

*Comm'r of Soc. Sec.*, 440 F. App'x 163, 164 (4th Cir. 2011) (citing *Hays v. Sullivan*, 907

F.2d 1453, 1456 (4th Cir. 1990)).  "In other words, if the ALJ has done his or her job

correctly and supported the decision reached with substantial evidence, this Court cannot

overturn the decision, even if it would have reached a contrary result on the same evidence."

*Schoofield v. Barnhart*, 220 F. Supp. 2d 512, 515 (D. Md. 2002).  Substantial evidence is

"more than a mere scintilla."  *Russell*, 440 F. App'x at 164.  "It means such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.*

2

(citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see also Hays*, 907 F.2d at 1456

(quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)) (internal quotation marks

omitted) ("It consists of more than a mere scintilla of evidence but may be somewhat less

than a preponderance.  If there is evidence to justify a refusal to direct a verdict were the

case before a jury, then there is substantial evidence.").

The Court does not review the evidence presented *de novo*, nor does the Court

"determine the weight of the evidence" or "substitute its judgment for that of the Secretary

if his decision is supported by substantial evidence."  *Hays*, 907 F.2d at 1456 (citations

omitted); *see also Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972) ("[T]he

language of § [405(g)] precludes a *de novo* judicial proceeding and requires that the court

uphold the Secretary's decision even should the court disagree with such decision as long as

it is supported by 'substantial evidence.'").  The ALJ, not the Court, has the responsibility to

make findings of fact and resolve evidentiary conflicts.  *Hays*, 907 F.2d at 1456 (citations

omitted).  If the ALJ's factual finding, however, "was reached by means of an improper

standard or misapplication of the law," then that finding is not binding on the Court.

*Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987) (citations omitted).

The Commissioner shall find a person legally disabled under Title II and Title XVI if she

is unable "to do any substantial gainful activity by reason of any medically determinable physical

or mental impairment which can be expected to result in death or which has lasted or can be

expected to last for a continuous period of not less than 12 months."  20 C.F.R. §§ 404.1505(a),

416.905(a) (2012).  The Code of Federal Regulations outlines a five-step process that the

Commissioner must follow to determine if a claimant meets this definition:

1) Determine whether the plaintiff is "doing substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i)(2012). If he is doing such activity, he is not disabled. If he is not doing such activity, proceed to step two.

2) Determine whether the plaintiff has a "severe medically determinable physical or mental impairment that meets the duration requirement in § [404.1509/416.909] or a combination of impairments that is severe and meets the duration requirement." 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii) (2012). If he does not have such impairment or combination of impairments, he is not disabled. If he does meet these requirements, proceed to step three.

3) Determine whether the plaintiff has an impairment that "meets or equals one of [the C.F.R.'s] listings in appendix 1 of this subpart and meets the duration requirement." 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii) (2012). If he does have such impairment, he is disabled. If he does not, proceed to step four.

4) Determine whether the plaintiff retains the "residual functional capacity" ("RFC") to perform "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv) (2012). If he can perform such work, he is not disabled. If he cannot, proceed to step five.

5) Determine whether the plaintiff can perform other work, considering his RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v) (2012). If he can perform other work, he is not disabled. If he cannot, he is disabled.

Plaintiff has the burden to prove that she is disabled at steps one through four, and Commissioner has the burden to prove that Plaintiff is not disabled at step five. *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992).

The RFC is an assessment that represents the most a claimant can still do despite any physical and mental limitations on a "regular and continuing basis." 20 C.F.R. §§ 404.1545(b)-(c), 416.945(b)-(c). In making this assessment, the ALJ "must consider all of the claimant's 'physical and mental impairments, severe and otherwise, and determine, on a function-by-function basis, how they affect [the claimant's] ability to work.'" *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019) (citing *Monroe v. Colvin*, 826 F.3d 176, 188 (4th Cir. 2016)); *see also* 20 C.F.R. §§ 404.1545(a), 416.945 (a). The ALJ must present a "narrative discussion describing

how the evidence supports each conclusion, citing specific medical facts (e.g. laboratory findings) and nonmedical evidence (e.g. daily activities, observations)," and must then "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *See Thomas*, 916 F.3d at 311; SSR 96-8p, 1996 WL 374184 at *7 (S.S.A. July 2, 1996). "Once the ALJ has completed the function-by-function analysis, the ALJ can make a finding as to the claimant's RFC." *Thomas*, 916 F.3d at 311. "Ultimately, it is the duty of the [ALJ] reviewing the case, and not the responsibility of the courts, to make findings of fact and to resolve conflicts of evidence." *Hays*, 907 F.2d at 1456 (citing *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)). "[R]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (citing *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013)).

### III.    Analysis

The ALJ evaluated Plaintiff's claim using the five-step sequential evaluation process. R. 18–29. At step one, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since June 14, 2017, the amended alleged onset date of Plaintiff's disability. R. 18. At step two, under 20 C.F.R. § 404.1520(c) and § 416.920(c), the ALJ determined that Plaintiff had the following severe impairments: degenerative disc disease, degenerative joint disease of the bilateral knees, obesity, hypertension, affective disorders, and anxiety disorder. *Id.* The ALJ stated that the listed impairments were severe because they "significantly limit the ability to perform basic work activities." *Id.* The ALJ also noted that Plaintiff suffered from chronic kidney disease and hypokalemia. *Id.* However, the ALJ stated that these conditions

5

appear to be medically managed and deemed these conditions as nonsevere.  R. 18–19.  At step

three, the ALJ determined Plaintiff "does not have an impairment or combination of impairments

that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part

404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d),

416.925 and 416.926)."  R. 19.  Before turning to step four, the ALJ determined that Plaintiff had

the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b) and 416.967(b), except

that:

> [Plaintiff] is limited to standing for two hours in an 8-hour workday, [and] walking
> for two hours in an eight-hour workday.  [Plaintiff] can never climb ladders, ropes or
> scaffolds, never balance, kneel, crouch or crawl, occasionally climb ramps and stairs,
> and occasionally stoop.  [Plaintiff] can never use foot controls with the left lower
> extremity or push/pull with the left lower extremity.  [Plaintiff] must avoid all
> exposure to unprotected heights.  [Plaintiff] would be able to understand, remember
> and carry out simple instructions and have occasional contact with the public and
> coworkers.  [Plaintiff] would be precluded from production rate pace.  [Plaintiff]
> cannot receive written instructions or be expected to do written work products.

R. 21.

At step four, the ALJ determined Plaintiff is unable to perform any past relevant work.  R.

27.  At step five, with the benefit of a Vocational Expert ("VE"), the ALJ found that there are

jobs that exist in significant numbers in the national economy that Plaintiff can perform,

including: inspector and hand packager, injection-molding-machine tender, and folder.  R. 28–

29.  The ALJ found that Plaintiff has not been under a disability, as defined in the SSA.  R. 29.

On appeal, Plaintiff argues that the Court should reverse the final decision of the ALJ, or

in the alternative, remand the case to the Commissioner for further proceedings, alleging that: (1)

the ALJ's step 3 analysis is inconsistent with her step 4/5 function-by-function assessment of

Plaintiff's mental RFC as required by SSR 96-8p and *Mascio v. Colvin*; (2) the ALJ's inadequate

mental RFC frustrates meaningful review of whether the ALJ found any limitations in Plaintiff's

ability to stay on task, 8 hours a day, 5 days a week; (3) the ALJ's term "preclusion from productive rate pate" in the RFC, fails under *Mascio* to describe the limitation from Plaintiff's moderate impairment in concentrating;[1] (4) the ALJ failed to provide enough information to determine whether the ALJ adequately accounted for Plaintiff's moderate limitations in concentration, persistence, and pace; (5) the ALJ failed to explain how moderate limitations in interacting with others affect [Plaintiff's] ability to respond appropriately to co-workers and supervisors, and the public on a sustained basis, 8 hours a day, 5 days a week; (6) the ALJ's RFC is not based on substantial evidence; (7) the ALJ's finding that Plaintiff is limited to light work is inconsistent with the definition of light work and the medical opinions of record; (8) the ALJ applied an improper standard in evaluating the medical evidence of record and "played doctor" by concluding that the evidence does not support the medical opinions of the treatment providers; (9) the ALJ failed to comply with the Fourth Circuit's holding in *Henderson v. Colvin*, *Pearson v. Colvin*, and SSR 00-4p in resolving the conflict between the VE's testimony and the Dictionary of Occupational Titles (DOT); and (10) the ALJ failed to find Plaintiff's intellectual disability evidenced by a Full-Scale IQ of 53 to be a severe impairment at step 2 of the five-step sequential evaluation process and the ALJ's failure was not based on substantial evidence.  Pl.'s Mem. in Supp. of Pl.'s Mot. 13–30, ECF No. 13–1.  Defendant contends that "the evidence supporting the ALJ's decision far exceeds the 'more-than-a-mere-scintilla threshold' to survive this Court's deferential review."  Def.'s Mem. in Supp. of Def.'s Mot. 6, ECF No. 15–1. Defendant argues that Plaintiff fails to establish a legal basis for her claim, and impermissibly

---

[1] The Court cannot ascertain whether Plaintiff contends that the ALJ's use of the words "production rate pace" or "preclusion from production rate pace" fails under *Mascio*.  Plaintiff's Motion uses "production rate pace" and "preclusion from production rate pace" interchangeably.  Considering the case law mentioned *infra*, the Court will identify the phrase "production rate pace" as the undefined term.  However, the Court will use the phrase "preclusion from production rate pace," when specified in Plaintiff's Motion.

asks this Court to "reweigh the evidence and craft a different RFC merely because she disagrees with the ALJ's decision." *Id.* The Court agrees in part with Plaintiff and remands the case for the reasons stated below.

Plaintiff asserts that the ALJ's RFC assessment is not based on substantial evidence because the ALJ used the term "preclusion from production rate pace." [2] Pl.'s Mem. in Supp. of Pl.'s Mot. 17. Plaintiff claims that the term "preclusion from production rate pace" fails under *Mascio. Id.* Plaintiff points to the Court's opinion in *Thomas v. Berryhill*, 916 F.3d at 312, where the Court found that the use of the terms "production rate" and "demand pace" was a basis for remand, as the ALJ did not define the terms "production rate" or "demand pace." *Id.* Plaintiff specifically contends that the RFC did not provide enough information to understand what "preclusion from production rate pace" means. *Id.* This Court agrees.

Generally, the Court will affirm the Social Security Administration's disability determination when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence. *Woods v. Berryhill*, 888 F.3d 686, 691 (4th Cir. 2018) (citing *Mascio*, 780 F.3d at 634). But when performing an RFC assessment, the ALJ must provide a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts and nonmedical evidence. SSR 96-8p, 1996 WL 374184, at *7 (S.S.A). "In other words, the ALJ must *both* identify evidence that supports his conclusion *and* 'build an accurate logical bridge from [that] evidence to his conclusion.'" *Woods*, 888 F.3d at 694.

Thus, a proper RFC analysis has three components: (1) evidence, (2) logical explanation, and (3) conclusion. *Thomas*, 916 F.3d at 312. The second component, the ALJ's logical explanation, is just as important as the other two. *Id.* Indeed, our precedent makes clear that

---

[2] This Court has clarified Plaintiff's arguments for conciseness.

meaningful review is frustrated when an ALJ goes straight from listing evidence to stating a

conclusion.  *Id.*  (citing *Woods*, 888 F.3d at 694).

As Plaintiff states in her argument, the Court in *Thomas* found that the use of the terms

"production rate" or "demand pace" was a basis for remand because the ALJ failed to define

those terms.  *Id.*  The Court in *Thomas* explained that:

> [T]he ALJ stated Thomas could not perform work, requiring a production rate or demand
> pace, [and thusly the ALJ] did not give us enough information to understand what those
> terms mean.  *Id.*  [Further], [t]hat makes it difficult, if not impossible, for us to assess
> whether their inclusion in Thomas's RFC is supported by substantial evidence.

*Id.  See Perry v. Berryhill*, 765 F. App'x 869, 872 (4th Cir. 2019) (finding that the ALJ's use of

the term "non-production oriented work setting," which is not defined by the regulations or case

law or otherwise self-explanatory, prevented meaningful review because the reviewing court

could not determine what the ALJ meant by the term or whether there was a "logical bridge"

between the evidence in the record and the ALJ's inclusion of the limitation).

There are other cases in which this district found that the ALJ's use of an undefined term

prevented meaningful review.  *See Travis X. C. v. Saul*, No. GJH-18-1210, 2019 WL 4597897, at

*5 (D. Md. Sept. 20, 2019) (where the Court found that the ALJ's use of the undefined term

"production rate pace" was an "inadequate explanation of his assessment of Plaintiff's RFC.");

*Victoria R. v. Comm'r, Soc. Sec. Admin.*, No. CV DLB-19-1752, 2020 WL 1929719, at *2 (D.

Md. Apr. 21, 2020) (where the Court found that "the term 'production rate pace' is similar to the

terms 'production rate' and 'demand pace' that the Fourth Circuit found frustrated appellate

review in *Thomas*."); *Jeffrey H. v. Saul*, No. CV TJS-20-0050, 2020 WL 6685282, at *2 (D. Md.

Nov. 12, 2020) (where the Court found that, "[t]he ALJ [did] not define the term 'production rate

pace' and the Court is uncertain what the ALJ meant by this term."); *Mona S. v. Saul*, No. 8:19-

CV-00990-GLS, 2020 WL 3440130, at *3 (D. Md. June 23, 2020) (where the Court found that

the ALJ's failure to define the phrase "no production rate for pace of work" meant that "Plaintiff's RFC assessment [could not] be meaningfully reviewed."); *Dawn G. v. Saul*, No. CV TJS-18-3426, 2020 WL 93950, at *2 (D. Md. Jan. 8, 2020) (where the Court found that "the ALJ committed the same error as in *Thomas*," by administering a hypothetical with the undefined term "production rate pace."); *Keith B. v. Saul*, No. 1:19-CV-00803-GLS, 2020 WL 3439261, at *3 (D. Md. June 23, 2020) (where the Court agreed with Plaintiff's argument that "'production pace' work is not defined by Social Security Regulations nor the Dictionary of Occupational Titles, and is not a phrase that has a common meaning.  Thus, the absence of a definition led the VE to consider a flawed hypothetical and to reach an erroneous conclusion.").

Here, the ALJ included the following limitation in the RFC assessment:

> . . . [Plaintiff] would be able to understand, remember and carry out simple instructions and have occasional contact with the public and coworkers.  [Plaintiff] would be precluded from production rate pace.  [Plaintiff] cannot receive written instructions or be expected to do written work products.

R 21.  Defendant avers that "the ALJ appropriately precluded 'production rate pace' work [in the RFC] considering Plaintiff's processing difficulties."  Def.'s Mem. in Supp. of Def.'s Mot. 12. Defendant claims that "the substantial evidence inquiry is not applied categorically, but instead 'case by case'" (internal citations omitted).  *Id.*  Defendant states that the ALJ supported the RFC assessment with substantial evidence.  *Id.* at 13.  Defendant cites to case law and the DOT to suggest that the DOT defines what "production rate pace" is.  *Id.* at 14.  Defendant also argues that the ALJ's narrative analysis of the evidence and the DOT's definition of "preclusion from production rate pace" allows the Court to conduct meaningful review.  *Id.*  at 12.  This Court disagrees and finds Defendant's reliance on the DOT misplaced.

When determining whether an ALJ's RFC is supported by substantial evidence, the Court not only has to understand the terms in the ALJ's RFC, but the Court must ensure that the ALJ

provided a "logical bridge" from the evidence to the conclusion. *Thomas*, 916 F.3d at 312.

Defendant's arguments fail for several reasons. Defendant's argument that "the ALJ

appropriately precluded 'production rate pace' work considering Plaintiff's processing

difficulties," is flawed because nowhere in the ALJ's RFC analysis, does the ALJ make a

"logical bridge" that she afforded Plaintiff the limitation of being precluded from "production

rate pace" *because* of her processing difficulties. Def.'s Mem. in Supp. of Def.'s Mot. 12.

Defendant does not point to anywhere in the record, and the Court does not find, where the ALJ

supported Plaintiff's limitation of being precluded from "production rate pace," with evidence

from the record. Defendant is also mistaken, because the issue is not whether the limitation

precluding "production rate pace" work was appropriate, but whether the ALJ sufficiently

supported the RFC with substantial evidence from the record. *Thomas*, 916 F.3d at 312; Def.'s

Mem. in Supp. of Def.'s Mot. 12. Defendant also alleges that the DOT defines what "production

rate pace is." Def.'s Mem. in Supp. of Def.'s Mot. 12. While Defendant provided examples of

how to classify jobs, when jobs require a "production rate pace" and even if the Court were to

accept Defendant's contention that "working at a production rate pace entail[s] the constant

pushing and/or pulling of materials," a precise definition for "production rate pace" that can be

applied to all cases as a "common term" is still absent. As the Court in *Thomas* stated,

"ambiguous terms make it difficult, if not impossible, to assess whether their inclusion in the

RFC, is supported by substantial evidence." *Thomas*, 916 F.3d at 312. Thus, Defendant's

reliance on the DOT's definition of "production rate pace" is misguided.

Defendant is asking this Court to go straight from "listing evidence to stating a

conclusion" which is impermissible under *Thomas*. *Thomas*, 916 F.3d at 312. Defendant's

reliance on *Sizemore v. Berryhill*, is also inaccurate.  *Sizemore v. Berryhill*, 878 F.3d 72, 80-81

(4th Cir. 2017).  Defendant argues that:

> [T]he court distinguished its decision in *Perry* and *Thomas* from its decision in an earlier case, *Sizemore v. Berryhill*, based on the particular facts of each case (internal citations omitted).  The court noted that in *Sizemore* the ALJ provided "additional context explaining that the claimant could perform work only in a 'low stress' setting, without any 'fast-paced production work' or 'public contact,' to account for moderate limitations in concentration, persistence, and pace," and "[t]hose descriptors helped to explain the restriction intended by the ALJ . . . ."

(internal citations omitted).  Def.'s Mem. in Supp. of Def.'s Mot. 13.  In *Perry*, the Court stated:

> We note that in *Sizemore v. Berryhill*, 878 F.3d 72, 80-81 (4th Cir. 2017), we found that an ALJ had adequately explained a residual functional capacity assessment that restricted the claimant, in part, to "non-production jobs."  But in contrast to this case and to *Thomas*, the ALJ in *Sizemore* provided additional context, explaining that the claimant could perform work only in a "low stress" setting, without any "fast-paced work" or "public contact," to account for moderate limitations in concentration, persistence and pace.  *Id.* at 79 (internal quotations omitted).  Those descriptors helped to explain the restriction intended by the ALJ and allowed us to evaluate whether that restriction adequately accounted for the claimant's limitations.  *Id.* at 81.

(internal citations omitted).  *Perry*, 765 F. App'x at 872 n.1.  In *Sizemore*, the ALJ conducted the

following RFC:

> Sizemore had "the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: he can never climb ropes, ladders, scaffolds[;] [must] avoid concentrated exposure to hazards and vibration[;] and can work only in [a] low stress [setting] defined as non-production jobs [without any] fast-paced work [and] with no public contact."

*Sizemore v. Berryhill*, 878 F.3d at 79.  The ALJ in *Sizemore* explained the term "low stress

setting" by explaining immediately after the term, that it is "defined as non-production jobs

without any fast-paced work . . .".  *Id.*  Defendant claims that "[l]ike the ALJ in *Sizemore*, the

ALJ here supported the RFC assessment with substantial evidence . . .".  Def.'s Mem. in Supp. of

Def.'s Mot. 13.  This Court disagrees.  The Court distinguishes this case from *Sizemore*, because

the ALJ did not provide any more context, explanation, or definition, for the term "production

rate pace" in her RFC analysis, RFC assessment, or when she posed the hypothetical question to

the VE.  R. 21–27.  Therefore, the Court is left to speculate, whether the ALJ's RFC is supported

by substantial evidence.

A review of the record suggests that the ALJ supported some other conclusions in the

RFC.  For instance, when concluding that Plaintiff is limited to "occasional contact with the

public," the ALJ noted:

> In the consultative psychological examination report dated June 2017, Dr. Celozzi
> opined that the claimant was able to understand, remember and carry out simple
> instructions and make judgments on simple work-related decisions but was unable to
> independently manage a potential benefits fund.  He added that the claimant has mild
> restrictions in interacting appropriately with the public and supervisors and moderate
> limitations in interacting appropriately with coworkers and responding appropriately
> to usual work situations and to changes in a routine work setting (internal citations
> omitted).  I accord great weight to the opinion that the claimant can understand,
> remember and carry out simple instructions and make simple work-related decisions.
> This is supported by the consultative examination reports of record and the treatment
> evidence through Total Health Care (internal citations omitted).  I find that the
> claimant is more limited in terms of interacting  with others and, therefore, find that
> she is limited to occasional contact with the public.

R. 25.  With this explanation, the ALJ properly built a logical bridge, to explain her findings in

Plaintiff's medical records, and how that translated to a limitation in the RFC.  However, as for

"production rate pace," the ALJ failed to build a logical bridge, as she did with limiting Plaintiff

to "occasional contact with the public."

Defendant also argues that "considering that the ALJ carefully crafted limitations specific

to the intellectual and cognitive deficits indicated in the record, it is apparent that the ALJ

similarly concluded that Plaintiff had the mental capacity to sustain concentration for tasks

commensurate with the range of work identified in the RFC."  Def.'s Mem. in Supp. of Def.'s

Mot. 14–15.  However, Defendant's argument lack merit.  The only other reference to Plaintiff's

mental limitations in the RFC, is when the ALJ discusses Plaintiff's reading deficiencies.  The

ALJ stated:

> Two State agency mental consultants, E. Lessans, Ph.D., and Maurice Prout, Ph.D.,
> reviewed the claimant's file in January 2017 and June 2017, respectively.  At the initial
> review level, Dr. Lessans adopted the mental restriction in the prior decision pursuant
> to *Albright* (internal citations omitted).  At the reconsideration review level, Dr.
> Prout opined that the claimant could understand, remember and carry out simple and
> very short instructions but only occasionally interact with the general public,
> supervisors and peers.  He added that the claimant may require periodic supervision
> (internal citations omitted).  I accord great weight to consideration of a medically
> determinable impairments under listing 12.04 because the medical record does reflect
> a diagnosis of mood disorder (NOS).  I accord great weight to the suggested mental
> functional limitations, as they adequately address the severity of the claimant's
> symptoms as established in the medical evidence.  In addition, I added limitations to
> address the claimant's reported reading deficiencies.

R. 27.  Although the ALJ states that "[she] added limitations to address [Plaintiff's] reported

reading deficiencies," nothing else in the record even minimally comes close to explain how

the ALJ concluded that Plaintiff was precluded from "production rate pace" work.  *Id.*

Upon review of the ALJ's narrative discussion, the Court finds that the ALJ generally

explains which evidence she used to support her RFC assessment; however, the ALJ fails to

explain the term "production rate pace" in her RFC analysis.  R. 21–27.  The use of the term

"production rate pace" is ambiguous, and the Court is unclear as to what the term means.  The

Court cannot determine whether the evidence was the basis for the ALJ's conclusion regarding

"production rate pace."  The ALJ also failed, to build a "logical bridge" from the evidence to her

inclusion of the limitation in the RFC, and absent any other explanation, this error prevents the

Court from conducting meaningful review.  *Id.*; Perry, 765 F. App'x at 872.  The Court cannot

ascertain whether the ALJ's RFC analysis is supported by substantial evidence, and thus, remand

is warranted.  On remand, the ALJ shall provide a proper definition of the term "production work

pace," and also explain what it means for Plaintiff to be "precluded from production work pace."

14

As mentioned above, Plaintiff also raises a number of other issues for review.  However, in view of the Court's decision to remand the matter due to the improper use of the undefined term "production rate pace," the Court declines to address the remaining issues.  *See Brown v. Colvin*, 639 F. App'x 921, 923 (4th Cir. 2016) (declining to address all of a claimant's issues raised once the court decided to remand on one issue); *Edna Faye H. v. Saul*, No. TMD-18-581, 2019 WL 4643797, at *6 (D. Md. Sept. 24, 2019).

On remand, the ALJ should address the issues raised by Plaintiff.  *Timothy H. v. Saul*, No. TMD 18-1675, 2019 WL 4277155, at *7 (D. Md. Sept. 10, 2019).  In remanding this case, the Court expresses no opinion on whether the ALJ's ultimate decision that Plaintiff was not disabled is correct or incorrect.  *See Parker v. Comm'r, Soc. Sec.*, No. ELH-16-2607, 2017 WL 679211, at *4 (D. Md. Feb. 21, 2017).

## IV.   Conclusion

Based on the foregoing, the Court hereby **DENIES** Plaintiff's Motion, **DENIES** Commissioner's Motion, **GRANTS** Plaintiff's Alternative Motion and **REMANDS** this matter for further proceedings.

March 31, 2021                                                 _____/s/_____
                                                              Charles B. Day
                                                              United States Magistrate Judge

CBD/pjkm